1
2
3
4
5
6
7
8
# UNITED STATES DISTRICT COURT
9
# CENTRAL DISTRICT OF CALIFORNIA
10
11
12
WILLIE LEE FOSTER,　　　　　　　　)　　　Case No. CV 17-7963-JEM
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Petitioner,　　　　　　)
13　　　　　　　　　　　　　　　　　　　)　　　MEMORANDUM OPINION AND ORDER
　　　　　　　　　　　　　　　　　　　)　　　DENYING PETITION FOR WRIT OF
　　　　　　v.　　　　　　　　　　　　)　　　HABEAS CORPUS AND DENYING
14　　　　　　　　　　　　　　　　　　　)　　　CERTIFICATE OF APPEALABILITY
M. SEXTON, Warden,　　　　　　　　　)
15　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Respondent.　　　　　　)
16 _____ )
17

## PROCEEDINGS
18

On October 31, 2017, Willie Lee Foster ("Petitioner"), a prisoner in state custody,
19

filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254.  On
20

December 22, 2017, Petitioner filed a First Amended Petition ("FAP").  On February 14,
21

2018, Warden Sexton ("Respondent") filed an Answer.  On July 31, 2018, Petitioner filed a
22

Traverse.
23

Pursuant to 28 U.S.C. § 636(c), both parties have consented to proceed before this
24

Magistrate Judge.
25

## PRIOR PROCEEDINGS
26

On November 2, 2015, a Los Angeles County Superior Court jury found Petitioner
27

guilty of three counts of attempted carjacking (Cal. Penal Code §§ 664, 215(a)) with
28

personal use of a deadly and dangerous weapon (Cal. Penal Code § 12022(b)(2)), and two counts of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)). (Lodged Document ("LD") 1, Clerk's Transcript ("CT") 132-36.) On January 8, 2016, Petitioner admitted two prior convictions constituting "strikes" under California's Three Strikes law and five prior prison term allegations (Cal. Penal Code § 667.5(b)). (CT 153-154; <u>see</u> CT 34-35.) On January 21, 2016, the trial court dismissed one "strike" conviction pursuant to <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 497 (1996), and sentenced Petitioner to an aggregate term of 17 years and four months in state prison. (CT 181-86, 188-91.)

Petitioner filed an appeal in the California Court of Appeal. (LD 3.) On February 22, 2017, the Court of Appeal affirmed the judgment in an unpublished opinion. (LD 4.) Petitioner filed a petition for review in the California Supreme Court, which summarily denied review on May 24, 2017. (LD 5, 6.)

## SUMMARY OF EVIDENCE AT TRIAL

Based on its independent review of the record, the Court adopts the following factual summary from the California Court of Appeal's unpublished opinion as a fair and accurate summary of the evidence presented at trial:

At about 1 a.m. on February 10, 2015, Sandra Jefferson's car stalled at a traffic light on Wilmington Avenue, at the end of the off-ramp from the 105 Freeway. The area is near the Imperial Courts housing projects and is known for gang and drug activity. Carolyn Moore and Willa Giles were passengers in Jefferson's car.

Jefferson got out of the car, leaving her door open, and lifted the hood. [Petitioner] approached from across Wilmington Avenue, and the women initially thought he was going to help them. Instead, [Petitioner] got behind the wheel and tried to start the car by turning the ignition key and fumbling with the knobs. According to Giles, he was "rambling on" that the car was his and he wanted to

2

take it.  Jefferson told him to get out because the car was not his, but [Petitioner] insisted it was and would not leave.  Jefferson realized [Petitioner] was under the influence of phencyclidine (PCP), and she knew, from having herself used PCP in the past, that it made a person exceptionally strong.  Because she did not think she and her passengers were "strong enough to handle him," Jefferson tried to send [Petitioner] away by telling him his car was across the street.

After Jefferson managed to pull [Petitioner] out of the car, he walked where she directed him to go and tried to get into other cars.  When he did not succeed, he returned and got back behind the wheel of Jefferson's car.  The women were frightened.  Moore, who also realized [Petitioner] was on PCP because of her own experience using the drug, told him to get out, but [Petitioner] continued to insist the car was his.  When Moore tried to push [Petitioner] out of the car, he pushed her back.  She then got out of the passenger seat, went around, and tried to pull him out.  Again, he pushed her away and they struggled.

At some point, Jefferson got a metal car jack out of the trunk "[t]o defend ourselves, to defend me, to defend the ladies" because she did not want "anything to happen to them."  Moore saw [Petitioner] and Jefferson struggle before she took the car jack out.  Giles saw [Petitioner] lunge at Jefferson with something in his hand before Jefferson swung the car jack and hit [Petitioner] in the head, drawing blood.  [Petitioner] stooped down, opened what appeared to be a knife, and started swinging it and jabbing at Jefferson and Moore.  According to Jefferson, [Petitioner] opened the knife after she had hit him twice with the car jack.  After [Petitioner] swung the knife at her, Moore took an umbrella out of the trunk and tried to knock the knife out of [Petitioner]'s hand, while Jefferson swung the car jack at him.  By then, Giles was out of the car as well.  The women circled around the car to get away from [Petitioner], who was

chasing them with the knife "like he was a madman." He persisted in trying to get in the car and at some point began scratching it with the knife.

Moore asked a passerby for help and to call police. Ricardo Ruiz, who was exiting the 105 Freeway, saw the stalled car and the three women going around it. He saw [Petitioner] going after them with some sort of a weapon, while they were fending him off with the car jack and the umbrella. When Ruiz tried to help the women, [Petitioner] came at him with the knife. Ruiz returned to his car, drove farther away, and called 911. At 1:13 a.m., a female caller reported that a man was trying to "jack" a woman's car on the 105 Freeway off-ramp; the caller said he was "beating" them and "going at them with knives."

When police arrived, [Petitioner] was seated in the driver's seat of Jefferson's car with a knife in his hand. He began walking away, and initially did not seem to understand the command to drop the knife, but eventually complied. . . .

At the jury trial, [Petitioner] testified in his own defense. He stated that he went to the projects from Gardena to buy PCP and blacked out after smoking it. When he came to hours later, he felt "stranded" in an unfamiliar neighborhood. Even though he had not driven there and did not own a car at the time, [Petitioner] thought he "had a car parked in the vicinity, and if [he] found [his] car everything would be all right." He was "pretty sure" he got inside Jefferson's car although he claimed not to remember doing so. He remembered Jefferson telling him to "go that way," and that he went in the direction she pointed. He could not recall trying to get into other cars but remembered coming back to Jefferson's car and trying to get inside.

[Petitioner] testified that at the time he did not know what the victims were saying, but was "pretty sure" they said the car was theirs and he said it was his.

He claimed he went backwards when Jefferson and Moore started hitting him with the car jack and umbrella and wondered why the women were trying to kill him. He admitted pulling out his knife and waving it at them. He also admitted trying to get back in the car while the women kept hitting him.

Dr. Jack Rothberg, a psychiatrist and forensic psychologist, testified [Petitioner] had mental health problems and significant substance abuse history. Dr. Rothberg explained that PCP is a potent drug that causes psychotic hallucinations, distortion of reality, and paranoia. However, a blackout caused by PCP does not prevent directed conscious action, even though the person may have no memory of it. According to Dr. Rothberg, a person on PCP has "superhuman strength, and police are well aware of the danger in trying to subdue someone on PCP. They're hard to get down." Such a person also is less sensitive to pain, more aggressive, and a danger to those around him.

In response to hypotheticals based on the facts of this case, Dr. Rothberg opined that someone on PCP who believes another person's car is his and tries to drive it off with its hood up is "clearly deranged" and "not making sense out of what [he is] observing." The doctor agreed that it would be difficult for "two or three untrained civilians middle aged to elderly" to subdue a person under the influence of PCP.

(LD 4 at 2-5.)

## PETITIONER'S CONTENTIONS

1. The evidence was insufficient to support Petitioner's convictions for assault with a deadly weapon. (Pet. at 5.)

2. The trial court erred in instructing the jury with CALCRIM No. 3472 because the instruction was not applicable to the facts of the case. (Id.)

5

1    3.    The evidence was insufficient to support Petitioner's convictions for attempted

2   carjacking.  (FAP at 5-6.)[1]

3                                          **STANDARD OF REVIEW**

4        The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the

5   Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as

6   amended by AEDPA, states:

7              An application for a writ of habeas corpus on behalf of a person in custody

8        pursuant to the judgment of a State court shall not be granted with respect to any

9        claim that was adjudicated on the merits in State court proceedings unless the

10       adjudication of the claim - (1) resulted in a decision that was contrary to, or

11       involved an unreasonable application of, clearly established Federal law, as

12       determined by the Supreme Court of the United States; or (2) resulted in a

13       decision that was based on an unreasonable determination of the facts in light

14       of the evidence presented in the State court proceeding.

15       Under AEDPA, the "clearly established Federal law" that controls federal habeas

16  review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court

17  decisions "as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S.

18  362, 412 (2000); see also Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (clearly

19  established federal law is "the governing legal principle or principles set forth by the

20  Supreme Court at the time the state court renders its decision").  "[I]f a habeas court must

21  extend a rationale before it can apply to the facts at hand, then by definition the rationale

22  was not clearly established at the time of the state-court decision."  White v. Woodall, 572

23  U.S. 415, 426 (2014) (internal quotation marks and citation omitted).  If there is no Supreme

24

25         [1]   Petitioner's original Petition contains Grounds One and Two.  Petitioner then filed the FAP
26  containing Ground Three, and indicated that he intended the FAP to add Ground Three rather than
    replace Grounds One and Two.  The Court ordered Respondent to address all three claims and
27  Respondent has done so.

28                                                    6

Court precedent that controls a legal issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam); see also Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A federal habeas court may grant relief under the "contrary to" clause if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. Williams, 529 U.S. at 405-406. "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of a particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). An unreasonable application of Supreme Court holdings "must be objectively unreasonable, not merely wrong." White, 572 U.S. at 419 (citing Andrade, 538 U.S. at 75-76; internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The state court's decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id.

A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. See Early v. Packer, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. Id.

A state court's silent denial of federal claims constitutes a denial "on the merits" for purposes of federal habeas review, and the AEDPA deferential standard of review applies. Richter, 562 U.S. at 98-99. When no reasoned decision is available, the habeas petitioner

7

1    has the burden of "showing there was no reasonable basis for the state court to deny relief."

2    Id. at 98.

3         The federal habeas court "looks through" a state court's unexplained decision to the

4    last reasoned decision of a lower state court, and applies the AEDPA standard to that

5    decision.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (federal habeas court should

6    "look through" unexplained state court decision to last state court decision "that does

7    provide a relevant rationale" and "should then presume that the unexplained decision

8    adopted the same reasoning," although presumption may be rebutted); Ylst v. Nunnemaker,

9    501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a

10   federal claim, later unexplained orders upholding the judgment or rejecting the same claim

11   rest upon the same ground.").

12        Petitioner presented his claims to the state courts on direct appeal.  (LD 3, 5.)  The

13   California Court of Appeal denied the claims in a reasoned decision and the California

14   Supreme Court summarily denied review.  (LD 4, 6.)  The Court looks through the California

15   Supreme Court's silent denial to the Court of Appeal's reasoned decision and applies the

16   AEDPA standard to that decision.  See Wilson, 138 S. Ct. at 1192; Ylst, 501 U.S. at 803.

**DISCUSSION**

17

18   **I.    Grounds One and Three Do Not Warrant Federal Habeas Relief**

19        In Grounds One and Three, Petitioner contends that the evidence at trial was

20   insufficient to support his convictions for assault with a deadly weapon (Ground One) and

21   attempted carjacking (Ground Three).  (Pet. at 5; FAP at 5-6.)

22        **A.    Applicable Federal Law**

23        The Due Process Clause of the Fourteenth Amendment guarantees that a criminal

24   defendant may be convicted only "upon proof beyond a reasonable doubt of every fact

25   necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358,

26   364 (1970).  The federal standard for assessing the constitutional sufficiency of the

27

28                                              8

evidence in support of a criminal conviction is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original); see also Wright v. West, 505 U.S. 277, 296-97 (1992) (plurality opinion). Put another way, the Jackson standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." Schlup v. Delo, 513 U.S. 298, 330 (1995).

The Jackson standard preserves the jury's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw inferences from basic facts. Jackson, 443 U.S. at 319; see also Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (reviewing court must respect the exclusive province of the trier of fact to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts). "[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup, 513 U.S. at 330. A federal habeas court faced with a record supporting conflicting inferences "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326; see also Wright, 505 U.S. at 296-97. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to sustain a conviction. United States v. Jackson, 72 F.3d 1370, 1381 (9th Cir. 1995); Walters, 45 F.3d at 1358. Ultimately, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).

Although sufficiency of the evidence review is grounded in the Fourteenth Amendment, the federal court must refer to the substantive elements of the criminal offense as defined by state law and must look to state law to determine what evidence is necessary to convict on the crime charged. See Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408

F.3d 1262, 1275 (9th Cir. 2005). However, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012).

Under AEDPA, the federal habeas court's inquiry is "even more limited"; the court "ask[s] only whether the state court's decision was contrary to or reflected an unreasonable application of Jackson to the facts of a particular case." Emery v. Clark, 643 F.3d 1210, 1213-14 (9th Cir. 2011); see also Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011) (where Jackson claim is "subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted"); Juan H., 408 F.3d at 1274 (under AEDPA federal courts must "apply the standards of Jackson with an additional layer of deference).

**B.      Ground One – Assault with a Deadly Weapon**

Petitioner contends that the evidence at trial was insufficient to support his convictions for assault with a deadly weapon on Jefferson and Moore because he acted in self-defense. He argues that the testimony showed that he did not pose a danger to Jefferson; she had no right to use deadly force against him to protect her vehicle; and he had a right to protect himself after Jefferson struck him with a tire jack and Moore started striking him with an umbrella. (Pet. at 5.) On direct appeal, the Court of Appeal rejected these arguments and found that substantial evidence supported the prosecutor's theory that Petitioner's aggressive conduct placed the victims in reasonable fear for their personal safety and caused the escalation of violence. (LD 4 at 11.)

In order to prove the crime of assault with a deadly weapon in violation of Cal. Penal Code § 245, the prosecution must prove that the defendant (1) did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person; (2) did that act wilfully; (3) was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (4) had the present ability to apply force with the deadly weapon. See CALCRIM No. 875. "Self-defense negates culpability for assaultive crimes." People v.

1  <u>Adrian</u>, 135 Cal. App. 3d 335, 340 (1982).  When the issue of self-defense is properly

2  raised, the prosecution has the burden of proving that the defendant did not act in self-

3  defense.  <u>Id.</u> at 340-41; <u>People v. Lee</u>, 131 Cal. App. 4th 1413, 1429 (2005) ("the People

4  have the burden to prove beyond a reasonable doubt that the defendant did not act in

5  self-defense").  The defendant acted in self-defense if he reasonably believed that he was

6  in imminent danger of suffering bodily injury, reasonably believed that immediate use of

7  force was necessary, and used no more force than was reasonably necessary to defend

8  against the danger.  CALCRIM No. 3470; <u>People v. Randle</u>, 35 Cal.4th 987, 994 (2005),

9  <u>overruled on other grounds by</u> <u>People v. Chun</u>, 45 Cal.4th 1172 (2009).  A defendant may

10  not invoke self-defense if his wrongful conduct (<u>e.g.</u>, the initiation of a physical attack or the

11  commission of a felony) has created circumstances under which his adversary's attack is

12  legally justified.  <u>People v. Enraca</u>, 53 Cal.4th 753, 761 (2012).

13       Viewing the evidence in the light most favorable to the prosecution, <u>see</u> <u>Jackson</u>, 443

14  U.S. at 319, Petitioner approached three women whose car had stalled at night in an area

15  known for gang activity and drugs.  (LD 2, Reporter's Transcript ("RT") 616, 620, 672-73.)

16  Petitioner got into the car, told Jefferson that the car was his, and argued with her as she

17  pulled him out of the car.  (RT 620-21, 650-52, 908-09.)  Jefferson believed that Petitioner

18  was under the influence of PCP and knew from personal experience that PCP makes a

19  person unusually strong.  (RT 622-25.)  Although she was able to persuade Petitioner to

20  leave, he soon returned and got into the car a second time, pushing Moore when she told

21  him to get out.  (RT 626-27, 653-54, 909-10.)  Once outside the car, Petitioner struggled

22  with Jefferson as she tried to keep him away.  (RT 911.)  At some point Petitioner took a

23  knife from his pocket and Jefferson took a "bumper jack" from the trunk "to defend

24  ourselves, to defend me, to defend the ladies."[2]  (RT 627, 630, 670, 911.)  Petitioner lunged

25

26  _____

27       [2]    Petitioner testified that he pulled out the knife after the women started hitting him and his face
    was bleeding.  (RT 936-37.)  Jefferson and Moore also testified that Jefferson got the car jack and hit

28                                                                                      (continued...)

at Jefferson and she hit his head with the jack, causing him to bleed. (RT 627-28, 655, 922.) Petitioner approached Jefferson again and she hit him with the jack a second time. (RT 627-28.) Petitioner unfolded his knife and swung it at Jefferson, jabbing at her from a distance of eight to ten inches. (RT 628, 657-59.) Moore started hitting Petitioner with her umbrella to protect Jefferson, and Petitioner jabbed his knife at Moore. (RT 628-30, 661.) The women started running around the car to get away from Petitioner. (RT 630, 633, 914.) Giles testified that Petitioner was acting like a "madman," swinging the knife at them. (RT 659.) A bystander testified that he saw three women circling round a car, fending off a pursuing man with a tire jack and an umbrella. (RT 606-07, 614.) When the bystander tried to intervene, Petitioner came at him with a knife. (RT 608, 631, 665.) Another bystander told the 911 operator that Petitioner was going after the women with a knife. (CT 83-85.) Based on this evidence, a rational jury could find that Petitioner was the aggressor and did not act in self-defense.

Petitioner insists that the evidence shows that Jefferson unjustifiably used deadly force to protect her car, and that he only used the knife to defend himself against Jefferson's jack and Moore's umbrella. (Pet. at 5.) That was the gist of Petitioner's defense at trial (RT 1258-64), which the jury rejected when it returned a guilty verdict. On a sufficiency of the evidence review, the Court must draw all reasonable inferences supporting the verdict. See McDaniel v. Brown, 558 U.S. 120, 133 (2010) (evidence that defendant washed his clothes immediately upon returning home supported inference that he did so to remove bloodstains; even though defendant provided alternative reason for washing clothes, reviewing court was obliged to draw inference supporting verdict). Petitioner wants the Court to reweigh the evidence and draw inferences different from the jury. That is impermissible. See Coleman, 566 U.S. at 655 ("Jackson leaves juries broad

---

[2](...continued)
Petitioner with it before Petitioner pulled out a knife. (RT 627-28, 924-25.) Giles testified that Petitioner pulled out a knife before Jefferson hit him with the jack, but opened it after he was hit. (RT 655-57, 669-70.)

discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts'" (citation omitted)); Cavazos, 565 U.S. at 8 n.* ("reweighing of facts . . . is precluded by Jackson").

Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court. Ground One does not warrant federal habeas relief.

### C. Ground Three – Attempted Carjacking

Petitioner contends that the evidence was insufficient to support his attempted carjacking convictions. Specifically, he contends that the evidence showed that he did not form the required specific intent because he "was not in [his] right mind," he "was under the influence," he wrongly believed that the vehicle was his, and the vehicle had its hood up and was clearly inoperable. (FAP at 5-6.)

Under California law, the elements of carjacking are: (1) the felonious taking of a motor vehicle in the possession of another, (2) from his or her person or immediate presence, (3) against his or her will, (4) with the intent to permanently or temporarily deprive the person of possession of the vehicle, (5) accomplished through force or fear. Cal. Penal Code § 215(a). A conviction for attempted carjacking requires proof of (1) a specific intent to commit carjacking and (2) a direct but ineffectual act done towards accomplishing the intended carjacking. See Cal. Penal Code §§ 21a; 215(a); see generally People v. Marshall, 15 Cal.4th 1, 36 (1997) ("An attempt to commit a crime occurs when the perpetrator, with the specific intent to commit the crime, performs a direct but ineffectual act towards its commission").

Evidence of voluntary intoxication may not be used to negate the capacity to form specific intent, but it is relevant to whether the defendant actually formed the required specific intent. Cal. Penal Code § 29.4; People v. Horton, 11 Cal.4th 1068, 1119 (1995). Specific intent may be inferred from "all the facts and circumstances surrounding the crime." People v. Lewis, 25 Cal.4th 610, 643 (2001).

On direct appeal, the Court of Appeal found that the evidence showed that Petitioner "intended to deprive the victims of possession of the vehicle." (LD 4 at 8.) It stated:

> [Petitioner] testified that when he regained consciousness after his PCP blackout, he felt "stranded" in the projects, but believed "everything would be all right" if he found his car. He proceeded to get behind the wheel of Jefferson's car and tried to start it, actions consistent with an intent to drive off. His trial testimony indicates he was aware of the women's immediate presence in and around the car, and he was "pretty sure" they claimed it was theirs; nevertheless, he persisted in trying to get in the car. It is reasonable to infer [Petitioner] intended to take control of Jefferson's car and drive away, despite the victims' immediate presence and their asserted right of control over the car.

(Id.)

The Court of Appeal explained:

> [Petitioner]'s claimed delusion that the car was his does not negate his intent to deprive the women of its possession since carjacking is crime against possession rather than ownership, and it is undisputed that he attempted to gain control of the car that was in the victims' immediate possession. [Petitioner]'s failure to realize that the car was not operational or that its hood was up does not negate this specific intent. It shows only that commission of the substantive crime of carjacking was factually impossible, but does not prevent [Petitioner]'s conviction of an attempt to commit that crime.

(Id. at 8-9) (citations omitted).

The Court of Appeal reasonably applied Jackson when it found the evidence sufficient to support Petitioner's convictions for attempted carjacking. Viewing the evidence in the light most favorable to the prosecution, see Jackson, 443 U.S. at 319, Petitioner walked towards Jefferson's stalled car, got behind the wheel, asserted the car was his, and tried to start the engine. (RT 620, 622, 650-51, 908.) Although at first Jefferson was able to

redirect him to other cars (6 RT 622, 652), he soon returned to Jefferson's car and again stated that it was his. (RT 626, 653, 909-10.) He resisted attempts by the victims to get him out of the car and keep him out of it. (RT 627, 653-54, 909-11.) He grabbed, pushed, and chased the victims and threatened them with a knife (RT 607, 627, 654, 662, 664, 909-11, 916), all the while insisting that the car was his (RT 664). He did not say anything during the incident that led Jefferson to believe that he was detached from reality. (RT 636-37.) When the police arrived, he was sitting in the driver's seat. (RT 677.) He got out of the car as ordered, then backed away from the police in an attempt to flee, but ultimately complied with orders to drop the knife and lie down. (RT 677-78.) A rational jury viewing this evidence could infer that Petitioner was aware of his actions and intended to take Jefferson's car from her and the other women. See Lewis, 25 Cal.4th at 643; Horton, 11 Cal.4th at 1119.

Petitioner stresses that he could not have driven away with Jefferson's car because it was inoperable. (FAP at 6.) But Petitioner could be convicted of attempted carjacking even if it was factually impossible to accomplish the completed crime. See People v. Meyer, 169 Cal. App. 3d 496, 504-05 (1985); see also People v. Lopez, 31 Cal.4th 1051, 1063 (2003) (when defendant intends to commit carjacking but is unable to move vehicle, his "conduct is punishable as attempted carjacking"). To the extent Petitioner argues that his failure to realize that he could not drive off with the car while the hood was up showed that he was "not in [his] right mind" (FAP at 6), Petitioner's counsel made this argument and the jury rejected it. (RT 1261). The Court cannot reweigh the evidence and draw different inferences from the jury. See Cavazos, 565 U.S. at 8 n.*.

Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court. Ground Three does not warrant federal habeas relief.

## II. **Ground Two Does Not Warrant Federal Habeas Relief**

Petitioner contends that the trial court erroneously instructed the jury with CALCRIM No. 3472 that "[a] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." (Pet. at 5; CT 125.)

### A. **California Court of Appeal's Decision**

Petitioner argued on direct appeal that "instructing the jury with CALCRIM No. 3472, and the prosecutor's argument that he was the aggressor throughout the incident misled the jury and prejudicially deprived him of a defense." (LD 4 at 9.) The Court of Appeal rejected his argument, stating:

> Here, the jury received two instructions on lawful self-defense, CALCRIM Nos. 3470 and 3474. The former states in relevant part that a defendant need not retreat in the face of deadly force and may pursue an assailant until the danger of death or bodily injury has passed; the latter states that the right to self-defense ends when the assailant withdraws or is no longer capable of inflicting injury. The jury also was instructed under CALCRIM No. 3472 that "[a] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."
>
> [Petitioner] relies on People v. Ramirez (2015) 233 Cal. App. 4th 940, where a majority of the Court of Appeal reversed the defendants' convictions for first degree murder after finding that CALCRIM No. 3472 and the prosecutor's argument "erroneously required the jury to conclude that in contriving to use force, even to provoke only a fistfight, defendants entirely forfeited any right to self-defense." (Ramirez, at p. 953.) Ramirez is distinguishable because the prosecutor in that case argued to the jury that CALCRIM No. 3472 prevents self-defense even against "the victim's unjustified use of deadly force" in response to "nondeadly fisticuffs." (Ramirez, at pp. 943, 948.)

Here, the defense argued that the victims used deadly force to protect their property, and that they were able to "hold[ ] their own" against [Petitioner], who was confused and pulled the knife in self-defense after he was hit with the car jack. But the prosecutor did not concede that the victims used unreasonable force to protect their property or that they unjustifiably escalated a nondeadly conflict. Rather, she presented a competing version of events.

The prosecutor argued that Jefferson and Moore used reasonable nondeadly force to pull or push [Petitioner] out of the car. Their efforts resulted in repeated struggles with [Petitioner], who was relentless, which gave the women the right to protect themselves if they believed they were in danger. The incident escalated when [Petitioner] repeatedly came back at the victims, and eventually pulled out a knife. The prosecutor relied on the victims' testimony that they believed they were in danger and could not handle [Petitioner], as well as on Dr. Rothberg's testimony that a person on PCP may not feel pain, may be aggressive, and may have superhuman strength. The prosecutor also highlighted the eyewitness reports of [Petitioner] beating the victims and chasing them with a knife.

[Petitioner]'s assumption that Jefferson used the car jack to protect her property is incorrect. . . Jefferson testified she used the car jack to protect herself and her passengers from [Petitioner] only after both she and Moore engaged in repeated "struggle[s]" with him, and Giles testified she saw [Petitioner] lunge at Jefferson with something in his hand before Jefferson hit him with the car jack. Jefferson knew from personal experience, and Dr. Rothberg confirmed, that a person on PCP is exceptionally strong and difficult to restrain. The eyewitnesses who saw the incident, or the latter portion of it, were in agreement that [Petitioner] continued to be the aggressor and that the women were retreating and defending themselves.

The prosecutor's argument that [Petitioner]'s unrelenting aggression placed the victims in reasonable fear for their personal safety and caused the escalation of violence is supported by substantial evidence. The record does not indicate that the jury was misled into rejecting [Petitioner]'s self-defense theory.

(LD 4 at 10-11) (citations omitted).

## B. Applicable Federal Law

Federal habeas corpus relief does not lie for errors of state law. <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990). A claim of instructional error does not raise a cognizable federal claim unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." <u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004). Even if an instruction is ambiguous, inconsistent, or otherwise deficient, it will violate due process only when a reasonable likelihood exists that the jury applied it in a manner that relieved the prosecution of its burden of proving every element beyond a reasonable doubt. <u>Waddington v. Sarausad</u>, 555 U.S. 179, 190-91 (2009); <u>Estelle</u>, 502 U.S. at 72. In determining whether a constitutional violation has occurred, the instructional error must be viewed in the context of other instructions and the trial record as a whole, not in artificial isolation. <u>See Estelle</u>, 502 U.S. at 72; <u>Cupp</u>, 414 U.S. at 147.

## C. Analysis

Petitioner contends that CALCRIM No. 3472 did not fit the circumstances of his case because he had the right to defend himself after Jefferson used deadly force against him. (Pet. at 5.) He argues that the instruction effectively deprived him of due process and the right to present a defense. (Traverse at 10.)

"Due process requires that criminal prosecutions 'comport with prevailing notions of fundamental fairness" and that 'criminal defendants be afforded a meaningful opportunity to

present a complete defense.'" Clark v. Brown, 442 F.3d 708, 714 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  But "[g]iving an instruction which is not supported by evidence is not a due process violation." Steele v. Holland, No. 15-cv-01084-BLF, 2017 WL 2021364, at *8 (N.D. Cal. May 12, 2017) (rejecting  argument that instructing jury with CALCRIM No. 3472 despite lack of factual support impaired petitioner's right to present complete defense); see also Boegeman v. Smith, No. 3:17-cv-00861-GPC-KSC, 2018 WL 3140469, at *10 (S.D. Cal. June 27, 2018) (factual invalidity of jury instruction did not constitute cognizable federal claim).  No clearly established federal law "constitutionally prohibits a trial court from instructing a jury with a factually inapplicable but accurate statement of state law." Fernandez v. Montgomery, 182 F. Supp. 3d 991, 1011 (N.D. Cal. 2016); accord Acajabon v. Espinoza, No. 16-cv-00183-MJS (HC), 2017 WL 5608070, at *13 (E.D. Cal. Nov. 21, 2017); Prock v. Sherman, No. CV 15-1175-PA (SS), 2017 WL 4480738, at *13 (C.D. Cal. Aug. 21, 2017), accepted by 2017 WL 4480083 (C.D. Cal. Oct. 5, 2017). On the contrary, the Supreme Court has held that due process is not violated when jurors are instructed on a legal theory that lacks evidentiary support because "jurors are well equipped to analyze the evidence." Griffin v. United States, 502 U.S. 46, 59-60 (1991). Thus, Petitioner's factual challenge to CALCRIM No. 3472 does not set forth a cognizable federal claim and cannot be a basis for federal habeas relief.

Moreover, the Court of Appeal's determination that the evidence warranted the instruction is entitled to a presumption of correctness that Petitioner has not rebutted.  See 28 U.S.C. § 2254(e); Steele, 2017 WL 2021364, at *8 ("Disagreement with the state court's interpretation of the facts made by reiterating the same contentions made previously does not satisfy this burden.").  Petitioner's actions in aggressively arguing with the victims, pushing Moore, grabbing Jefferson and lunging at her, and swinging a knife at the victims and pursuing them around the car provided sufficient evidence to warrant instructing the jury with CALCRIM No. 3742.  See People v. Eulian, 247 Cal. App. 4th 1324, 1334-35 (2016) (evidence that defendant confronted victim in her vehicle while his mother tried to

1  pull him away, victim kicked defendant and his mother, and defendant punched victim and
2  knocked her out constituted sufficient factual predicate for CALCRIM No. 3472).

3     Furthermore, CALCRIM No. 3742 must be viewed in the context of other instructions.
4  See Estelle, 502 U.S. at 72; Cupp, 414 U.S. at 147.  The jury was instructed regarding self-
5  defense with CALCRIM No. 3470 [Right to Self-Defense or Defense of Another] and No.
6  3724 [Danger no Longer Exists or Attacker Disabled].  (CT 124, 126.)  It was also instructed
7  that some instructions might not apply because their applicability depended on the jury's
8  factual findings.  (CT 97.)  Whether or not CALCRIM No. 3742 applied depended on
9  whether the jury found that (as the prosecutor argued) Petitioner was the aggressor from
10  start to finish (RT 1253-55, 1267-68), or that (as trial counsel argued) Petitioner pulled out
11  his knife to defend himself against Jefferson's unjustified escalation of the conflict and use
12  of deadly force (RT 1258, 1263).  The Court of Appeal reasonably found that there was no
13  reasonable likelihood that the jury was misled.  See Middleton, 541 U.S. at 438.

14     In his Traverse, Petitioner argues that CALCRIM No. 3472 relieved the prosecution
15  of its burden of proving guilt beyond a reasonable doubt.  (Traverse at 11.)  "Jury
16  instructions relieving States of this burden violate a defendant's due process rights."
17  Carella v. California, 491 U.S. 263, 265 (1989) (per curiam).  But Petitioner does not explain
18  how CALCRIM No. 3472 reduced the prosecution's burden of proof.  Conclusory assertions
19  cannot be a basis for habeas relief.  See Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir.
20  2011) ("cursory and vague" claim cannot support habeas relief); James v. Borg, 24 F.3d 20,
21  26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of
22  specific facts do not warrant habeas relief.").  The jury was clearly instructed that the
23  prosecution had the burden of proving beyond a reasonable doubt that Petitioner did not act
24  in self defense.  (CT 124.)  Nothing in CALCRIM No. 3472 lightened that burden.

25     Accordingly, the state court's rejection of ths claim was not contrary to, or an
26  unreasonable application of, clearly established federal law as set forth by the United States
27  Supreme Court.  Ground Two does not warrant federal habeas relief.

28

III. **Petitioner Is Not Entitled to An Evidentiary Hearing**

Petitioner has requested an evidentiary hearing.  (Traverse at 2.)  The United States Supreme Court has held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181.  "[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."  Sully v. Ayers, 725 F.3d 1057, 1075 (9th Cir. 2013).  Moreover, an evidentiary hearing is not warranted when "the record refutes the applicant's factual allegations or otherwise precludes habeas relief."  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  Petitioner, therefore, is not entitled to an evidentiary hearing.

IV. **Petitioner's Request for a Stay Is Denied**

Petitioner has requested a stay of these proceedings to allow him to exhaust state remedies as to the following five claims, which were articulated for the first time in the Traverse:[3]

[1] Petitioner was intoxicated, under the influence of P.C.P.[4]

---

[3]  On April 28, 2018, the Court received a letter from Petitioner stating that he "bypassed state remedies unknowingly" and "intended to file a state petition before federal."  He requested "a stay in order to exhaust state remedies" so that he could "amend further issues that [he would] argue in state petition additionally to those argued on present petition."  Petitioner never identified the claims in the Petition that he believed were unexhausted nor did Respondent contend that any of the claims were unexhausted.  Moreover, Petitioner never identified any new claims that he planned to exhaust.  On June 21, 2018, Petitioner sent another letter to the Court again asking about a stay.  On July 3, 2018, the Court issued an order indicating that a stay was not necessary as to the claims in the Petition because there was no allegation that the claims were unexhausted.  The Court further stated that, [t]o the extent that Petitioner is requesting some other relief from the Court, such request has not been clearly identified" and that further requests for relief "should be submitted in the form of a noticed motion."  Again, Petitioner did not identify any new claims that he sought to exhaust.  On July 31, 2018, Petitioner filed his Traverse, in which he clarified that, "Petitioner's claims are exhausted, [e]ven though Petitioner has requested this court for stay/abeyance to exhaust other unexhausted claims," and identified for the first time five new "claims to be exhausted."

[4]  It does not appear that this claim is new.  The Court has already considered and rejected Petitioner's claim that the evidence was insufficient to support his attempted carjacking convictions because, inter alia, he did not form the required specific intent due to the fact he was under the influence of P.C.P.  (See supra pp. 13-15.)  The Court cannot determine, and declines to speculate, whether Petitioner intended to assert some other claim based on P.C.P. intoxication.

[2] Petitioner's appointed counsel rendered ineffective assistance of counsel and deficient performance.[5]

[3] Petitioner's multiple convictions and sentence for multiple attempted carjackings, on the same broke down car, during the same bad acts is illegal and must be reversed.

[4] The trial judge violated his prophyl[a]ctic duty when he failed to explain to Petitioner his <u>Boykin</u> <u>Thal</u> rights and the consequen[c]es therein. Rendering Petitioner's prior convictions unconstitutional.

[5] In July the 9th Circuit decided that according to <u>Johnson v United States</u> (citation omitted) carjacking is no longer a crime of violence. [H]ow does this [a]ffect the attempted version?

(Traverse at 5.)

A state prisoner must exhaust his or her state court remedies before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, a habeas petitioner must fairly present his or her federal claims in the state courts in order to give the state the opportunity to pass upon and correct alleged violations of the petitioner's federal constitutional rights. <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam). For a petitioner in California state custody, this generally means that the petitioner must have fairly presented the claims in a petition to the California Supreme Court. <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 845 (interpreting 28 U.S.C. § 2254(c)); <u>Gatlin v. Madding</u>, 189 F.3d 882, 888 (9th Cir. 1999) (applying <u>O'Sullivan</u> to California).

To the extent that the "new claims" identified in the Traverse are unexhausted, the Court finds that a stay is not warranted.

---

[5] In a letter received by the Court on June 12, 2019, Petitioner purports to "amend" his ineffective assistance of counsel claim as follows: "At preliminary hearing my lawyer was given the opportunity to argue affirmative defense and opted not to w[h]ich sabot[a]ged my defense." (Docket No. 32.) This letter was received nearly a year after Petitioner filed his Traverse in which he first identified an ineffective assistance of counsel claim.

**A.    Petitioner Is Not Entitled to a Stay Under <u>Rhines v. Weber</u>**

Pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), a district court has discretion to stay a petition to allow a petitioner to exhaust his claims in state court if the following three requirements are met: (1) the petitioner has good cause for his failure to exhaust his claims; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory tactics.  <u>Id.</u> at 278.  Petitioner has failed to meet these requirements.

Petitioner has failed to show good cause for his failure to exhaust.  In April 2018, approximately six months after the Petition was filed, Petitioner sent a letter to the Court stating that he had "filed the petition that was given from my prior attorney which [he] believed was a state petition," was "aware" that he had bypassed state remedies, and "intended to file a state petition before federal."  (Docket No. 23.)  He gave no reason for this failure other than confusion regarding where to file and good faith on his part.  (<u>Id.</u>)  These vague and conclusory allegations are insufficient to justify Petitioner's failure to exhaust the five new claims after his direct appeal concluded.  <u>See</u> <u>Blake v. Baker</u>, 745 F.3d 977, 982 (9th Cir. 2014) ("An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's failure to exhaust.")  Moreover, Petitioner did not even identify those claims until another three months had passed, when he filed his Traverse on July 31, 2018.  Even now, his claims are set forth in a vague and confusing manner, he has not sought leave to amend to add them to his petition, and he has made no attempt to complete the exhaustion process (<u>See</u> https://appellatecases.court.info.ca.gov).  There is nothing before the Court to support a finding of good cause.

Petitioner's unexhausted claims are not potentially meritorious within the meaning of <u>Rhines</u> because they are vague, conclusory, and unsupported by specific facts or evidence.  <u>See, e.g.</u>, <u>Lesopravsky v. Warden</u>, No. CV 16-7110-JPR, 2018 WL 2085333, at *7 (C.D. Cal. May 3, 2018) ("Claims composed of vague and conclusory allegations unsupported by

specific facts or evidence are not potentially meritorious within the meaning of Rhines.);

Ramirez v. Borders, No. SACV-16-00522-DSF (KES), 2017 WL 3841794, at *8 (C.D. Cal.

May 9, 2017) (finding claim "plainly meritless" under Rhines because "Petitioner failed to

allege sufficient facts to state a colorable claim for federal habeas relief"), accepted by 2017

WL 3841810 (C.D. Cal. Sep. 1, 2017); Taylor v. Paramo, No. EDCV 15-1496-JFW (KS),

2016 WL 3922055, at *7 (C.D. Cal. June 3, 2016) (finding petitioner's vague assertion of

ineffective assistance of counsel plainly meritless), accepted by 2016 WL 3922047 (C.D.

Cal. July 20, 2016).  The description of Petitioner's unexhausted claims is so cursory that he

could not obtain relief on the merits.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)

(conclusory allegations, unsupported by a "statement of specific facts," do not warrant

habeas relief).  Accordingly, Petitioner has failed to show the potential merit of his claims.

Finally, even assuming Petitioner has shown good cause and that his claims are

potentially meritorious, he is not entitled to a Rhines stay because he has intentionally

engaged in dilatory tactics.  Petitioner has made no attempt to exhaust his new claims since

his conviction became final on August 22, 2017.[6]  (See https://appellatecases.court.info.

ca.gov.)  Thus, for almost two years Petitioner has failed to move those claims toward

resolution or litigate them in any manner.  He failed to present them to the state courts,

failed to include him in his Petition, failed to identify them to the Court or Respondent until

he filed his Traverse, and even then failed to allege them in more than cursory terms.

Based on the foregoing, Petitioner is not entitled to a stay under Rhines.

---

[6]  The California Supreme Court denied Petitioner's petition for review on May 24, 2017.  (LD 6.)
Therefore, his conviction became final 90 days later on August 22, 2017.  See Bowen v. Roe, 188 F.3d
1157, 1558-59 (9th Cir. 1999); see also Caspari v. Bohlen, 510 U.S. 383, 390 (1994) ("A state
conviction and sentence become final for purposes of retroactivity analysis when the availability of direct
appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has
elapsed or a timely filed petition has been finally denied.") The applicable one-year statute of limitations
in this case  expired on August 22, 2018.  See 28 U.S.C. § 2244(d)(1)(A); Patterson v. Stewart, 251
F.3d 1243, 1246 (9th Cir. 2001).

**B.    Petitioner Is Not Entitled to a Stay Under <u>Kelly v. Small</u>**

Alternatively, a court may grant a stay under <u>Kelly v. Small</u>, 315 F.3d 1143 (9th Cir. 2003), which requires compliance with the following three-step procedure: (1) if the petition contains both exhausted and unexhausted claims, the petitioner files an amended petition deleting his unexhausted claims; (2) the district court "stays and holds in abeyance the amended, fully exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust the deleted claims"; and (3) the petitioner subsequently seeks to amend the federal habeas petition to reattach "the newly-exhausted claims to the original petition." <u>King v. Ryan</u>, 564 F.3d 1133, 1135 (9th Cir. 2009).  Under <u>Kelly</u>, however, the petitioner is only allowed to amend in order to add newly-exhausted claims back into his federal petition if the claims are timely under the AEDPA or "relate back" to the exhausted claims in the pending petition.  <u>Id.</u> at 1140-41; <u>see also</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 662-64 (2005).  A claim relates back if it shares a "common core of operative facts" with one or more of the claims in the pending petition.  <u>Mayle</u>, 545 U.S. at 664.  A new claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  <u>Id.</u> at 650.  Here, Petitioner would not be entitled to a stay under <u>Kelly</u> because the unexhausted claims, as articulated in the Traverse and Petitioner's letters, do not relate back to those set forth in the Petition[7] and would be untimely.  Petitioner's conviction became final on August 22, 2017, and the one-year statute of limitations expired on August 22, 2018.[8]  Thus, even if Petitioner were granted a stay under <u>Kelly</u> and exhausted his claims in state court, the newly exhausted claims would be barred by the statute of limitations.

Accordingly, Petitioner is not entitled to a stay under <u>Kelly</u>.

---

[7] <u>See</u> <u>supra</u> n.4.

[8] <u>See</u> <u>supra</u> n.6.

**V.      Petitioner's Request for Discovery Is Denied**

Although it is not entirely clear, Petitioner appears to seek discovery of investigation reports and transcripts of 911 calls that he believes were made by an eyewitness, his wife, and possibly other witnesses.  (Docket No. 31.)  Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts allows the parties to engage in discovery in the discretion of the court and "for good cause shown."  Calderon v. U.S. Dist. Court for the N. Dist. Of Cal. (Nicolaus), 98 F.3d 1102, 1104 (9th Cir. 1996).  There is no general right to discovery in habeas proceedings.  Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999).  Discovery is only available to a habeas petitioner if he presents colorable claims for relief. Id. at 1068.  A petitioner must set forth specific allegations of facts to warrant discovery under Rule 6; conclusory allegations are insufficient.  Calderon v. U.S. Dist. Court, 98 F.3d at 1106.  Discovery is not available to a petitioner if he has not sought the discovery first from the state's highest court.  Id.

A review of the state court docket demonstrates that Petitioner filed unsuccessful motions for discovery in the superior court and court of appeal, but there is no indication that he sought discovery from the state's highest court. (See https://appellatecases.court. info.ca.gov.)  Thus, discovery is not available to him.  Moreover, his requests are general and conclusory, and he has failed to set forth specific allegations of fact demonstrating that discovery is warranted.  Finally, Petitioner has failed to present a colorable claim for relief based on the documents he seeks.

Petitioner has failed to show good cause, and his request for discovery is denied.

**VI.      Petitioner's Request for Expansion of the Record Is Denied**

Petitioner also has requested an order permitting him to expand the record, apparently to include the 911 call transcripts, investigation reports, and a page from a brief filed with the trial court.  (Docket Nos. 31 & 32.)  A court entertaining a federal habeas petition "may direct the parties to expand the record by submitting additional materials relating to the petition."  Rule 7(a), Rules Governing Section 2254 Cases.  A party seeking to expand the record must demonstrate entitlement to an evidentiary hearing under the

federal habeas statute.  <u>Holland v. Jackson</u>, 542 U.S. 649, 653 (2004); <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1241 (9th Cir. 2005).  The Court has concluded that an evidentiary hearing is not warranted for the reasons set forth above.  Moreover, there is no showing that the documents at issue have any bearing on the claims that have been or could be brought before the Court.  Accordingly, Petitioner's request to expand the record is denied.

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11 of the Rules Governing Section 2254 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  For the reasons stated above, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, as is required to support the issuance of a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2).

**ORDER**

IT IS ORDERED that: (1) the Petition is denied; (2) Petitioner's request for an evidentiary hearing is denied; (3) Petitioner's request for a stay is denied; (4) Petitioner's request for discovery is denied; (5) Petitioner's request for expansion of the record is denied; (6) a certificate of appealability is denied; and (7) Judgment shall be entered dismissing this action with prejudice.

DATED: <u>August 9, 2019</u>                                    <u>    /s/ John E. McDermott    </u>
                                                                            JOHN E. MCDERMOTT
                                                                  UNITED STATES MAGISTRATE JUDGE